IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRANDON D. LEONARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-1316-F |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff, Brandon D. Leonard, seeks judicial review of the Social Security Administration's denial of his application for supplemental security income (SSI). United States District Judge Stephen P. Friot has referred the matter for proposed findings and recommendations. *See* 28 U.S.C. §§ 636(b)(1)(B), 636(B)(3); Fed. R. Civ. P. 72(b). The Commissioner has filed the Administrative Record (AR) [Doc. No. 8], and both parties have briefed their positions.[1] For the reasons set forth below, it is recommended that the Commissioner's decision be affirmed.

**I.    Procedural Background**

On July 9, 2015, an Administrative Law Judge (ALJ) issued an unfavorable decision finding Plaintiff was not disabled and, therefore, not entitled to SSI. AR 11-21. The Appeals Council denied Plaintiff's request for review. *Id.* at 1-3. Accordingly, the ALJ's decision constitutes the Commissioner's final decision. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Plaintiff timely commenced this action for judicial review.

---

[1] Citations to the parties' briefs reference the Court's ECF pagination.

**II.     The ALJ's Decision**

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining process); *see also* 20 C.F.R. § 416.920. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since October 1, 2013, his amended alleged onset date. AR 13.

At step two, the ALJ determined that Plaintiff suffers from the following severe impairments: back pain, asthma, obesity, attention deficit hyperactivity disorder (ADHD), depressive disorder, intermittent explosive disorder, and Asperger's syndrome. *Id*. At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* at 13-15.

The ALJ next determined Plaintiff's residual functional capacity (RFC), concluding that he could perform less than the full range of light work.[2] Specifically, the ALJ found:

> [Plaintiff] can stand or walk for two hours and sit for six hours in an eight-hour workday. [Plaintiff] can perform no climbing ladders, ropes or scaffolds, no crouching[,] no balancing for job tasks, occasional climbing stairs and ramps, kneeling, crawling and stooping. [Plaintiff] requires a climate controlled work environment with no concentrated exposure to fumes, odors, dusts and gases. He can perform simple and some complex tasks with routine supervision, no public contact, and no customer service work. [Plaintiff] is able to interact appropriately with others on a superficial work basis and he is able to adapt to work situations.

*Id.* at 15-16.

At step four, the ALJ determined Plaintiff has no past relevant work. *Id.* at 19. At step five, relying on a vocational expert's (VE) testimony, the ALJ found Plaintiff can perform other work including the jobs of document scanner, product inspector, and address clerk, and that these

---

[2] *See* 20 C.F.R. § 416.967(b) (setting forth requirements for light work).

jobs exist in significant numbers in the national economy. *Id.* at 19-20. Therefore, the ALJ concluded that Plaintiff was not disabled for purposes of the Social Security Act. *Id*. at 20.

### III.     Claims Presented for Judicial Review

Plaintiff challenges the ALJ's RFC assessment regarding both his physical and mental impairments. Regarding the physical impairments, Plaintiff alleges that the RFC is "unsupported by any medical evidence." Pl.'s Br. at 2. For the mental impairments, Plaintiff alleges the ALJ: (1) failed to incorporate all the consultative examiner's findings on functional limitations; (2) relied on stale State agency opinions; (3) failed to include any functional limitations for Plaintiff's ADHD, depressive disorder, intermittent explosive disorder, and Asperger's syndrome; and (4) failed to include functional limitations due to Plaintiff's "math disorder," which is significant because the jobs the VE identified all require math skills. *See id.* at 4-8. For the reasons set forth below, the Court finds no grounds for reversal.

### IV.     Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *See Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). While the Court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, it does not reweigh the evidence

or substitute its own judgment for that of the Commissioner. *See Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

V.   **Analysis**

   A.   **The ALJ's RFC Assessment Regarding Plaintiff's Physical Impairments**

The ALJ documented the medical evidence relating to Plaintiff's physical impairments and noted that two State agency physicians had opined that Plaintiff's physical impairments were not severe. AR 17-19. The ALJ gave these opinions "limited weight" because they relied on "a period prior to the amended alleged onset date." *Id.* at 19. Plaintiff agrees with the ALJ's decision on that point, but argues that because she rejected the only two medical opinions in the record, it "leaves the ALJ's RFC unsupported by any medical opinion." Pl.'s Br. at 2. Relatedly, Plaintiff claims there is no evidence to show he can perform "light"[3] work and argues the ALJ should have "obtained some medical evidence or opinion as to Plaintiff's functional limitations . . . ." *Id.*[4] Notably, Plaintiff does not allege that the ALJ ignored any existing medical evidence and he does not identify any physical functional limitations he believes the ALJ omitted from the RFC. *See id.* at 2-3.

---

[3] As noted above, the ALJ used the phrase "light" work but then limited Plaintiff to less than a full range of light work. *Supra* p. 2. The VE identified only sedentary jobs the Plaintiff could perform, and the ALJ relied on those job descriptions to find Plaintiff not disabled. AR 20, 83.

[4] Defendant interprets Plaintiff's brief as also alleging that the ALJ failed to consider his obesity. *See* Def.'s Br. at 2, 4. Presumably, Defendant refers to Plaintiff's footnote, wherein he claimed the ALJ made "assumptions as to Plaintiff's functional limitations due to his 'severe' obesity without obtaining medical evidence or opinion as to the functional limitations." Pl.'s Br. at 3, n.1. The Court interprets this statement as supporting Plaintiff's overall allegation that the ALJ should have developed the record before assessing the RFC, and not as an independent claim that the ALJ erred in considering Plaintiff's obesity. This interpretation is largely based on Plaintiff's failure to fully develop any obesity claim. *See Keyes-Zachary*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those contentions that have been adequately briefed for review.").

4

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996). It "considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." *Id*. at *1.

The Court concludes that substantial evidence supports the ALJ's RFC assessment regarding Plaintiff's physical limitations. The ALJ considered the medical evidence and Plaintiff's testimony, AR 16-19, and to the extent Plaintiff's impairments resulted in limitations, the ALJ included and properly accounted for those limitations in the RFC. For example, the ALJ limited Plaintiff's walking and standing, and found he could perform no or only occasional climbing, crouching, kneeling, stooping, etc. *See id.* at 15. The ALJ also found that Plaintiff must work in a climate controlled work environment. *See id.* In significant part, these restrictions were greater than even Plaintiff claimed he needed. *See id.* at 247 (marking no relevant physical limitations in the section asking what his impairments affect). Indeed, Plaintiff agreed at his hearing that he "really [doesn't] have a physical problem. The sitting and standing and walking is not really what's limiting [him] and keeping [him] from working." *Id.* at 67.

Finally, while the record may have lacked an opinion on functional limitations, this is not a circumstance where the record contained a "direct conflict in the medical evidence, inconclusive medical evidence, or [needed] additional tests . . . to explain [a] diagnoses." *Jazvin v. Colvin*, 659 F. App'x 487, 490 (10th Cir. 2016). So, the ALJ had no duty to further develop the record or order a consultative examination regarding Plaintiff's physical impairments. *See id.* Under such circumstances, the Court should find that substantial evidence supports the ALJ's RFC assessment as it relates to Plaintiff's physical impairments. *See Young v. Barnhart*, 146 F. App'x 952, 955

(10th Cir. 2005) ("The determination of RFC is an administrative assessment, based upon all the evidence of how the claimant's impairments and related symptoms affect [his] ability to perform work-related activities. . . . The final responsibility for determining RFC rests with the Commissioner, based upon all the evidence in the record, not only the relevant medical evidence.").[5]

## B. The ALJ's RFC Assessment Regarding Plaintiff's Mental Impairments

Plaintiff also challenges the RFC as it relates to his mental impairments. Specifically, he alleges the ALJ: (1) failed to include the consultative psychologist's findings that Plaintiff needs extra time to complete tasks and to minimize distractions; (2) improperly relied on "stale" agency opinions; (3) failed to include any limitations based on Plaintiff's ADHD, depressive disorder, intermittent explosive disorder, and Asperger's syndrome; and (4) failed to include functional limitations due to Plaintiff's "math disorder" and the jobs the VE identified all require math skills. *See* Pl.'s Br. at 4-8.

### 1. The Consultative Examiner's Findings

Dr. Laura Eckert, a psychologist, performed a consultative examination on Plaintiff in July 2012. AR 449. Based on numerous tests, Dr. Eckert found Plaintiff's overall intellectual and thinking abilities were in the low range, while his verbal, auditory and phonemic awareness abilities and scores were the average range. *Id.* at 460. Dr. Eckert also noted Plaintiff's "memory score" and "ability to focus his attention" were low average, as were his math skills. *Id.* at 460-

---

[5] Alternatively, any error is harmless. As noted, the ALJ cited and discussed all the medical evidence, Plaintiff identifies no physical limitation that the RFC omitted, and Plaintiff testified that his physical limitations did not prevent him from working. The Court can thus confidently say that "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

61. The consultative examiner further commented that "[f]ew Asperger's symptoms were observed by the examiner and those that were observed were mild/subclinical with the exception of current social/peer functioning." *Id.* at 461. Dr. Eckert recommended that Plaintiff be accommodated with "the ability to take a test in a separate area (or area free from distractions), access to a computer to type responses during tests or for assignments, extra time for task completion and tests, access to extra help in a resource room, if needed for organization and specific skills suggestions." *Id.* at 462.

The ALJ considered this opinion and gave it "some weight," and also acknowledged that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. *Id.* at 14, 18. According to Plaintiff, the ALJ erred because she failed to incorporate into the RFC Plaintiff's need for extra time to complete tasks and an environment with minimal distractions. *See* Pl.'s Br. at 5-6. Plaintiff further argues that the ALJ limiting Plaintiff to "simple and some complex tasks" does not account for these limitations. *Id.* at 5. The Court disagrees.

For example, in *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016), the medical record established the plaintiff was, in relevant part, moderately limited in her ability to: (1) maintain concentration, persistence, and pace, (2) remain attentive and keep concentration for extended periods; and (3) work with others without getting distracted. *See id.* at 1268. The ALJ assessed the plaintiff's RFC, finding she could "engage in only simple, repetitive, and routine tasks." *Id.* at 1269. The Tenth Circuit held this RFC properly accommodated the plaintiff's functional limitations. *Id.* The Court should find the same here. *See id.*; *see also Orso v. Colvin*, 658 F. App'x 418, 420 (10th Cir. 2016) (holding claimant's "moderate difficulty with concentration, persistence, and pace is encompassed by the limitation of work involving 'simple tasks with some detail.'" (citation omitted)).

7

## 2. The Agency Opinions

Two State agency psychologists opined that Plaintiff could perform simple and some complex tasks, could relate to others on a superficial basis, and could adapt to work situations. AR 396, 416. The ALJ gave these opinions "great weight" "because they are consistent with [Plaintiff's] treatment history and his ability to perform activities such as driving and attending school." *Id.* at 18. Pointing out that the opinions were written in May 2012 and October 2012, Plaintiff claims the ALJ erred because the opinions were stale, and argues the ALJ should have further developed the record. *See* Pl.'s Br. at 6. Plaintiff also complains that the psychologists did not examine Plaintiff and one agency psychologist used a "checkbox form with little explanation." *Id.* at 7. The Court finds no error.

Reliance on a "patently stale opinion" can be "troubling." *Chapo v. Astrue*, 682 F.3d 1285, 1293 (10th Cir. 2012). However, the State agency psychologists opined that Plaintiff could perform simple and some complex tasks and the ALJ reached the same conclusion after considering all the medical evidence. Further, Plaintiff fails to cite any evidence suggesting that his mental impairments had worsened after October 2012. So, the Court should find no reversible error in the ALJ's reliance on these opinions based on their age. *See Sardono v. Colvin*, No. CIV-15-291-W, 2016 WL 1618271 at *4-5 (W.D. Okla. Mar. 11, 2016) (unpublished report and recommendation) (finding no reversible error in the ALJ's reliance on older opinions where plaintiff failed to cite any evidence which showed a change in severity or otherwise conflicted with those opinions), *adopted*, 2016 WL 1599497 (W.D. Okla. Apr. 20, 2016) (unpublished district court order); *see also, Hudgins v. Colvin*, No. CIV-13-664-M, 2014 WL 2504515, at *1, *2-3 (W.D. Okla. June 3, 2014) (unpublished district court order) (same).

The Court should likewise find no error in Plaintiff's related claims. When evaluating medical opinions, an ALJ must consider the extent to which the medical source provides "relevant evidence to support" his or her opinion. *McDonald v. Astrue*, 492 F. App'x. 875, 882 (10th Cir. 2013). This is particularly true for nonexamining sources. *Id.* However, the ALJ may give such opinions substantial weight when they are consistent with other evidence in the record. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). Here, both agency psychologists gave reasons for their opinions, AR 392, 416, and Plaintiff presents no valid argument that either opinion was inconsistent with the evidence in the record.

In sum, Plaintiff fails to establish any error in the ALJ's reliance on the State agency psychologists' opinions.

### 3. Plaintiff's ADHD, Depressive Disorder, Intermittent Explosive Disorder, and Asperger's Syndrome

Plaintiff next alleges the ALJ's RFC assessment is faulty because it fails to include any functional limitations stemming from his ADHD, depressive disorder, intermittent explosive disorder, and Asperger's syndrome. *See* Pl.'s Br. at 7. Plaintiff again claims that the ALJ should have developed the record to obtain some opinion as to the functional limitations. *Id.* The Court disagrees for two reasons.

First, the ALJ included mental functional limitations in the RFC, limiting Plaintiff to only "simple and some complex tasks with routine supervision, no public contact, and no customer service work." AR 15. Plaintiff does not explain how these restrictions fail to account for his ADHD, depressive disorder, intermittent explosive disorder, and Asperger's syndrome. *See Kirkpatrick v. Colvin*, 663 F. App'x 646, 649 (10th Cir. 2016) (rejecting plaintiff's argument regarding the alleged omission of certain limitations in an RFC because "[plaintiff] doesn't explain how the[] restrictions [that were included in the RFC] fail to account for his [limitations]").

9

Second, an ALJ is not required to include any limitations in the RFC unless the record supports those imitations. *See id.* at 650 ("Clearly, an ALJ doesn't commit error by omitting limitations not supported by the record."). As noted above, this is not a circumstance where there was a "direct conflict in the medical evidence, inconclusive medical evidence, or additional tests [were] needed to explain [a] diagnoses" and further development of the record was therefore not required. *Jazvin*, 659 F. App'x at 490. And, Plaintiff neither identifies any additional functional limitations that the ALJ should have included nor does he cite any medical evidence to support his conclusion. *See, e.g., McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) (affirming in part because plaintiff does not "discuss any evidence that would support the inclusion of any limitations [in the RFC]" and holding "the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC [assessment]"). It is not this Court's duty to search the record for medical evidence that might support Plaintiff's alleged limitations. *See N.M. Off-Highway Vehicle All. v. U.S. Forest Serv.*, 645 F. App'x 795, 803 (10th Cir. 2016) ("[I]t is emphatically not this court's duty to scour without guidance a voluminous record for evidence supporting [Plaintiff's] theory." (internal quotation marks and citation omitted)).

### 4. Plaintiff's Math Disorder

Dr. Eckert diagnosed Plaintiff with "Mathematics Disorder," AR 462, but the ALJ did not find it to be a severe impairment at step two. *Id.* at 13. Nevertheless, an ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe, in assessing the RFC. *See* 20 C.F.R. § 416.945(a)(2). Plaintiff alleges that the ALJ failed to do that, and had she properly accounted for Plaintiff's "significant problems with

mathematics," the ALJ "would have found Plaintiff could not perform the jobs [the VE] identified." Pl.'s Br. at 8. The Court finds no reversible error.

"The mere diagnosis of a condition does not establish its severity or any resulting work limitations." *Paulsen v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016). The ALJ discussed testimony suggesting Plaintiff had difficulty counting and handling money; however, she also noted that Plaintiff had previously attended "Metro Tech where he studied aviation mechanics," and "has a checkbook and a checking account." AR 16-17. With these inconsistencies, the ALJ found Plaintiff's allegations to be less than credible, *see id.* at 17-19, and Plaintiff does not challenge that assessment.

Moreover, even if the evidence showed Plaintiff only capable of performing at a fourth grade math level,[6] the jobs the VE identified all required only Level 1 math skills. *See* Dictionary of Occupational Titles (DOT) 249.587-018 (document scanner); DOT 726.684-050 (product inspector); and DOT 209.587-010 (address clerk). Level 1 requires only the ability to:

> Add and subtract two-digit numbers. Multiply and divide 10's and 100's by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound.

*Id.* Plaintiff offers nothing but his own speculation that Level 1 requires more than fourth grade mathematics skills and the Court should find no reversible error on this ground. *See, e.g., Hutson v. Berryhill*, No. CIV-16-1356-STE, 2017 WL 5473732, at *4-5 (W.D. Okla. Nov. 14, 2017)

---

[6] To assert this fact, Plaintiff relies on an assessment performed in 2007 – a full six years before his alleged onset date. *See* Pl.'s Br. at 8 (citing AR 365 (dated June 14, 2007)). That assessment did find Plaintiff's arithmetic skills fell in the fourth grade level, but then noted that "[t]hese results seem to be somewhat lower than those reported by his school and probably are indicative of the normative comparison group." AR 365.

(unpublished order) (finding no reversible error in plaintiff's argument he could not perform jobs requiring Level 1 math skills with second grade math level).

## RECOMMENDATION

For the reasons discussed above, it is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by December 29, 2017. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 15th day of December, 2017.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE